UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


AVN CORPORATION,

      Plaintiff,

v.                          Civil Action No. 2:23-cv-00149

RESEARCH TECHNOLOGIES,
LLC and RODMAN EGGEN,

      Defendants.


MEMORANDUM OPINION AND ORDER


      Pending before the court are defendant Rodman Eggen's Motion to Dismiss for Lack of Personal Jurisdiction, ECF 11, filed on January 15, 2024, and Motion for a Protective Order and for a Stay of Future Discovery Directed to Mr. Eggen, ECF 33, filed on June 20, 2024.


I.    Factual Background


      This case arises out of a contract entered into on February 25, 2021, by a now-defunct West Virginia 501(c)(3) corporation, MATRIC, and Research Technologies, LLC, ("RT"). See Compl. ECF 1 at 2.

      According to the complaint, MATRIC conducted chemical process research and development. Id. at ¶ 9. RT is a Texas limited liability company that sought professional services from

MATRIC related to research and development of chemical
processes.  Id. at ¶ 10.  The plaintiff, AVN Corporation
("AVN"), on January 1, 2023, became a successor in interest to
MATRIC and the due holder by assignment from MATRIC of MATRIC's
claims against RT.  Id. at ¶ 2.

AVN alleges that in February 2021, RT, through its
principal, Rodman Eggen, contacted MATRIC and solicited it to
provide chemical research and development services.  Id. at ¶
10.  AVN's complaint alleges that at the time MATRIC and RT
entered into the services agreement, upon information and
belief: (1) Eggen was RT's managing member, sole member, and
director of engineering, id. at ¶ 11; and (2) "there was such
unity of interest and ownership between Eggen and [RT] that the
separate personalities of [RT] and Eggen no longer existed."
Id. at ¶ 12.

On February 25, 2021, Eggen, on behalf of RT, entered
into a Master Services Agreement and Statement of Work #2021-01
(collectively, the "services agreement") with MATRIC to complete
confidential work for RT.  Id.  The services agreement estimated
that the component parts of the project would exceed $350,000 in
total and require months to complete.  Id. at ¶ 18.

AVN alleges that when signing the services agreement
on behalf of RT, Eggen knew that RT was not adequately

capitalized and did not have the ability to pay the estimated costs under the services agreement. Id. at ¶ 34.

MATRIC performed under the contract and invoiced its fees and expenses to RT, with costs reasonably reflecting the estimates provided in the services agreement. Id. at ¶ 19. However, as soon as May 2021, RT ceased making payments on the invoices submitted by MATRIC for the services already performed. Id. at ¶ 22. Sometime thereafter, MATRIC assigned its position under the contract to AVN and ceased to exist. See id. at ¶ 27.

On February 22, 2023, AVN filed its complaint against RT and Eggen. ECF 1. Count I asserts a claim against both RT and Eggen for breach of contract, id. at ¶¶ 32-33, and Count II asserts a claim against Eggen for fraudulent inducement. Id. at ¶¶ 34-38. AVN seeks judgment in the amount of $243,978.05 plus interest for outstanding invoices, as well as attorney's fees, costs, and any other relief available. Id. at ¶ 39(a)-(d). The summons for both RT and Eggen were executed in Texas. See ECF 7; ECF 8.

On January 15, 2024, Eggen filed the motion to dismiss and a supporting memorandum concurrent with his combined answer to the complaint and counterclaim. ECF 11. Attached to his motion is a sworn declaration. Decl. of Rodman Eggen, ECF 11-1. He argues in his memorandum of law supporting his motion to

dismiss that the exercise of personal jurisdiction over him
would violate federal due process requirements because: (1) he
does not have sufficient minimum contacts with West Virginia to
support specific or general jurisdiction, and (2) maintaining a
suit against him in the state would offend traditional notions
of fair play and substantial justice.  See ECF 12 at 7-9.

AVN filed its response on January 29, 2024.  ECF 13.
It argues that the court may exercise personal jurisdiction over
Eggen because: (1) the complaint alleges that Eggen, as member
and officer of RT, personally participated in the fraud against
MATRIC, a West Virginia company, and thereby conferred personal
jurisdiction; and (2) it has sufficiently alleged that RT's
corporate veil should be pierced, which it says would also
confer personal jurisdiction.  Id. at 1.

On February 5, 2024, Eggen filed a reply, primarily
arguing that piercing the corporate veil is not a valid basis on
which to assert personal jurisdiction.  ECF 16 at 3-5.  Eggen
also asserts that because the sworn declaration he attached to
his motion went uncontradicted, the court must accept as true
the statements in the declaration and not those in the
complaint.  Id. at 2.

Eggen filed the motion for a protective order and for
a stay of future discovery requests directed at him on June 20,

2023.  ECF 33.  He argues in his memorandum attached to the
motion that the motion and stay should be granted pending
resolution of his motion to dismiss for lack of personal
jurisdiction.  See ECF 34.

## II.  Legal Standard

When a federal court's personal jurisdiction is
challenged under Federal Rule of Civil Procedure 12(b)(2), "the
jurisdictional question is to be resolved by the judge, with the
burden on the plaintiff ultimately to prove grounds for
jurisdiction by a preponderance of the evidence."  Carefirst of
Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396
(4th Cir. 2003) (citing Mylan Labs, Inc. v. Akzo, N.V., 2 F.3d
56 (4th Cir. 1993)).  Where the court "addresses the
[jurisdictional] question on the basis only of motion papers,
supporting legal memoranda and the relevant allegations of a
complaint, the burden on the plaintiff is simply to make a prima
facie showing of a sufficient jurisdictional basis to survive
the jurisdictional challenge."  New Wellington Fin. Corp. v.
Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005).
In considering a challenge on the record, the court "must
construe all relevant pleading allegations in the light most
favorable to the plaintiff, assume credibility, and draw the
most favorable inferences for the existence of jurisdiction."

Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989).  The court

must take allegations in a complaint as true, except where the

facts are controverted by a defendant's affidavit.  See Wolf v.

Richmond Cty. Hosp. Auth., 745 F.2d 904, 907 (4th Cir. 1984)

(citing Black v. Acme Mkts, Inc., 564 F.2d 681, 683, n. 3 (5th

Cir. 1977)).

        For a district court to exercise personal jurisdiction

over a nonresident defendant, two conditions must be satisfied:

(1) a state long-arm jurisdiction statute must authorize

jurisdiction over the non-resident defendant; and (2) the

court's exercise of personal jurisdiction over the non-resident

defendant must "comport with the due process requirements of the

Fourteenth Amendment."  See Carefirst, 224 F.3d at 396 (citing

Christian Sci. Bd. of Dirs. of the First Church of Christ v.

Nolan, 259 F.3d 209, 215 (4th Cir. 2001)).  Because West

Virginia's long-arm statute "is coextensive with the full reach

of due process, it is unnecessary . . . to go through the normal

two-step formula for determining the existence of personal

jurisdiction."  In re Celotex Corp., 124 F.3d 619, 627-28 (4th

Cir. 1997) (internal citation omitted).

        Consequently, the court's inquiry is whether the

exercise of personal jurisdiction over the non-resident

defendant is consistent with the Due Process Clause, which

occurs "if the defendant has sufficient 'minimum contacts' with the forum such that requiring the defendant to defend its interests in the forum does not 'offend traditional notions of fair play and substantial justice.'" In re Celotex Corp., 124 F.3d at 628 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). "A defendant should be able to anticipate being sued in a court that can exercise personal jurisdiction over him; thus, to justify an exercise of jurisdiction, a defendant's actions must have been 'directed at the forum state in more than a random, fortuitous, or attenuated way.'" Mitrano v. Hawes, 377 F.3d 402, 407 (4th Cir. 2004) (quoting ESAB Grp., Inc. v. Centricut, Inc., 126 F.3d 617, 625 (4th Cir. 1997)).

        A court may exercise specific jurisdiction over an out of state defendant if the defendant's contact with the forum state provides the basis for the suit. ALS Scan, Inc. v. Digit. Serv. Consultants, Inc., 293 F.3d 707, 711 (4th Cir. 2002). To determine whether specific jurisdiction exists, the court should consider: "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiff's claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be

constitutionally 'reasonable.'" Id. On the other hand, a court may only exercise general jurisdiction if the defendant's contact with the forum state does not provide the basis for the suit. Id. To establish general jurisdiction over the defendant, the defendant's activities in the state must have been continuous and systematic such that they are essentially at home there. Id. at 712.

Regarding a tort allegation, "a court may exercise specific personal jurisdiction over a nonresident defendant acting outside of the forum when the defendant has intentionally directed his tortious conduct toward the forum state, knowing that that conduct would cause harm to a forum resident." Carefirst, 334 F.3d at 398 (citing Calder v. Jones, 465 U.S. 783, 789 (1984)).

With these standards in mind, the court considers Eggen's motion to dismiss for lack of personal jurisdiction.

### III. Analysis

Eggen moves this court to dismiss the complaint pursuant to Rule 12(b)(2) for lack of personal jurisdiction. ECF 11 at 2. He argues that AVN cannot carry its burden to show that minimum contacts exist between Eggen and West Virginia to support the exercise of general or specific jurisdiction over him. Id. at 1. Eggen maintains that the court need not

consider factors relevant to traditional notions of fair play and substantial justice, but that such elements weigh against the exercise of personal jurisdiction in this case.  Id. at 11.

AVN asserts that specific jurisdiction exists over Eggen because: (1) minimum contacts sufficiently link Eggen to West Virginia, so the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice; (2) Eggen is not shielded by his position as an officer or member of RT; and (3) the court is entitled to pierce the corporate veil of RT to confer personal jurisdiction over Eggen personally. ECF 13 at 5-9.  AVN does not assert that general jurisdiction exists over Eggen.  ECF 13 at n.1.

As an initial matter, the court notes that Eggen attaches a sworn declaration to his motion to dismiss, executed on January 12, 2024.  ECF 11-1.  Pursuant to 28 U.S.C. § 1746, this declaration has the same force and effect as an affidavit. The court must take allegations in a complaint as true, except where the facts are controverted by a defendant's affidavit. See Wolf, 745 F.2d at 907 (citing Black, 564 F.2d at 683, n. 3).

Eggen states in his declaration that RT consists of two members, Eggen and JAW Enterprises, Inc. ("JAW"), each owning fifty percent of RT, and that he has no ownership interest in JAW.  ECF 11-1 at ¶ 4.  These facts contradict AVN's

9

position that Eggen is the sole member of RT and that at the
time of executing the services agreement, Eggen and RT had unity
of interest and ownership to be considered one and the same.
See ECF 1 at 3, 11-12.  AVN fails to directly address Eggen's
position that he is one of two equal owners in RT in its
response to Eggen's motion to dismiss.  See ECF 13.  Instead,
AVN reiterates its position that Eggen's role as a member of RT
fails to shield him from personal liability.

Because Eggen has controverted AVN's assertions
regarding ownership of RT, the court disregards AVN's
allegations about his sole ownership of RT.  The court assumes
the other uncontroverted facts in Eggen's declaration as true.[1]
Nevertheless, because the relief sought by AVN does not require
Eggen to be the sole owner of RT, AVN's complaint survives
despite this controverted fact.

---

[1] Eggen also asserts in his declaration that he is a resident of
Texas, ECF 11-1 at ¶ 1, and has been since 1996, id. at ¶ 2; he
has never personally transacted business in West Virginia, id.
at ¶ 7, and he has never personally contracted to supply
services or things in West Virginia, id. at 8.; he has never
owned any real property in West Virginia, id. at ¶ 9; he has
never personally contracted to insure anyone in West Virginia,
id. at ¶ 10; and he has not been present in West Virginia in
more than twenty years, id. at ¶ 11.  Eggen states that RT has
ensured that corporate formalities (e.g., a separate bank
account, separate books from its members, filing its own
business tax return, etc.) are followed to maintain itself as a
stand-alone business entity, id. at ¶ 12, and that contracts for
RT are executed in RT's name only, id. at ¶ 13.

Turning to Eggen's jurisdictional challenge, Eggen argues in his memorandum supporting his motion to dismiss that specific jurisdiction is not present since he did not purposefully avail himself of the privilege of conducting activities within West Virginia because: (1) a person's interest in out-of-state management of a company does not automatically confer specific personal jurisdiction over him in West Virginia; (2) the complaint fails to contain any allegations taken by him as an individual outside his capacity as an officer, employee, and member of RT; and (3) he has no sufficient contacts with West Virginia as an individual.  See ECF 12 at 9-10.

The court agrees that a person's interest in and management of a company does not inherently confer specific personal jurisdiction over him.  AVN does not advance this argument.

In his second argument, Eggen posits that "the mere fact that [he] discussed the company business with [MATRIC] and executed documents in his capacity as a company employee and member is wholly insufficient to subject [him] to jurisdiction in West Virginia."  ECF 12 at 10.  He further states that the complaint "contains no allegations of any actions taken by [him] as an individual as opposed to his capacity as an [officer], employee, and member of [RT]."  Id.  He implies that the

"fiduciary shield" doctrine applies to his actions that form the basis of the complaint.  The doctrine provides that "the acts of a corporate officer or employee taken in his corporate capacity within the jurisdiction generally do not form the predicate for jurisdiction over him in his individual capacity."  Pittsburgh Terminal Corp. v. Mid Allegheny Corp., 831 F.2d 522, 525 (4th Cir. 1987) (quoting Bulova Watch Co. v. K. Hattori & Co., 508 F.Supp. 1322, 1347 (E.D.N.Y. 1981)) (internal quotation omitted).  However, the Fourth Circuit has held that the fiduciary shield doctrine is not available where the forum state's long-arm statute is coextensive with the full reach of due process, id., as it is here.

Regarding Eggen's position that he lacks sufficient contacts with West Virginia, AVN counters that specific jurisdiction exists because it alleges facts in its complaint to demonstrate sufficient minimum contacts and to satisfy the "Calder effects test."  ECF 13 at 6; see Calder, 465 U.S. at 787.

A. Minimum Contacts

Eggen states in his declaration attached to his motion to dismiss that he has never personally transacted business in West Virginia and that he has not entered the state for over twenty years.  ECF 11-1 at ¶¶ 7, 11.  Eggen further asserts that

he owns no property in West Virginia and has been a resident of Texas since 1996.  Id. at ¶¶ 2, 9.  Eggen received service of process in Texas.  ECF 8.

His only admitted action in West Virginia, while conducting business in his capacity as manager of RT, is his contact with and solicitation of MATRIC to enter into the services agreement.  Specifically, AVN alleges that "[RT], through its principal, Eggen, contacted MATRIC in February of 2021 and solicited MATRIC to provide certain professional services related to research and development in chemical processes."  ECF 1 at ¶ 10.  The complaint continues, "Eggen executed [the services agreement] on behalf of [RT].  Id. at ¶ 16.  AVN argues that "due process does not require that the defendant be physically present in the forum" for the court to exercise jurisdiction over him.  See ECF 13 at 3 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)).

The Fourth Circuit has considered what out-of-state contacts suffice as purposeful availment of a defendant in the forum state, and it has indicated various considerations a court should make in the "flexible" minimum contacts analysis. Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 560 (4th Cir. 2014).  For example, relevant to Eggen's motion, "in the business context," the factors the court may consider include

(1) "whether the defendant owns property in the forum state;"
(2) "whether the defendant reached into the forum state to
solicit or initiate business;" (3) "whether the defendant
deliberately engaged in significant or long-term business
activities in the forum state;" (4) "whether the defendant made
in-person contact with the resident of the forum in the forum
state regarding the business relationship;" (5) "the nature,
quality and extent of the parties communications about the
business being transacted;" and (6) "whether the performance of
contractual duties was to occur within the forum." Id. (quoting
Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278
(4th Cir. 2009) (citations and internal quotations omitted)).
The Fourth Circuit has generally "concluded that a foreign
defendant has purposefully availed itself of the privilege of
conducting business in the forum state when the defendant
'substantially collaborated with a forum resident and that joint
enterprise constituted an integral element of the dispute.'" Id.
(quoting Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber
Co., 682 F.3d 292, 302 (4th Cir. 2012)). On the other hand,
such purposeful availment is lacking where "the locus of the
parties' interaction was overwhelmingly [out-of-state]." Id.

        Eggen's assertion that he owns no property in West
Virginia and has not travelled here in two decades, which the

court accepts as true, weighs against Eggen's purposeful

availment.  Although AVN fails to specify how RT solicited

MATRIC's services, and we assume as true Eggen's assertion that

he made no in-person contacts with West Virginia, it is

undisputed that RT, by and through Eggen, reached into the state

to solicit MATRIC's services thereby initiating business in West

Virginia.  This factor supports Eggen's purposeful availment.

Neither party indicates whether RT had any other long-term

business contacts in West Virginia, and the date of initiation

of the services agreement to the alleged breach occurred over

just a few months, so this factor neither weighs toward nor

against Eggen's purposeful availment.  AVN failed to allege with

specificity the nature, quality, and extent of RT's or Eggen's

contacts with MATRIC, though it is undisputed that RT, by and

through Eggen, contacted MATRIC to initiate the services

agreement.  This factor weighs toward Eggen's purposeful

availment since Eggen initiated the contact.  Finally, the

contract was to be performed by MATRIC in West Virginia, and,

though Eggen was not physically in West Virginia during the

interactions, the entirety of the parties' interaction was

directed at West Virginia, thereby supporting a finding of

Eggen's purposeful availment.

A review of the alleged facts supports the conclusion that Eggen purposefully availed himself to the West Virginia courts under Universal Leather, LLC, 773 F.3d at 560, and satisfies the first minimum contacts requirement under ALS Scan, Inc., 293 F.3d at 711.  Eggen's actions involving MATRIC and the services agreement gave rise to the dispute, so AVN's claims arise out of Eggen's activities that were directed at West Virginia, thereby satisfying the second ALS Scan, Inc. requirement.  Id.  The court's exercise of personal jurisdiction over Eggen appears to be constitutionally reasonable, and Eggen could "reasonably anticipate being haled into court" in West Virginia given his conduct with MATRIC in this state.  Id.; Chung v. NANA Dev. Corp., 783 F.2d 1124, 1127 (4th Cir. 1986) (citing World-Wide Volkswagen, 444 U.S. at 297, 100 S.Ct. at 567) ("the defendant's conduct and connection with the forum State [must be] . . . such that he should reasonably anticipate being haled into court there.").  The third ALS Scan, Inc. requirement is satisfied.  Id.

### B.    Calder Effects Test

In Count II of its complaint, AVN alleges that Eggen fraudulently induced MATRIC to enter into the contract underlying this dispute.  ECF 1 at ¶ 38.  According to AVN, when Eggen signed the services agreement on behalf of RT, he knew

that RT was not adequately capitalized and did not have sufficient assets or ability to pay under the contract. Id. at ¶ 34. AVN further alleges that Eggen did not disclose this undercapitalization and, through his actions and communications, falsely represented and promised that RT could and would pay under the contract. Id. at ¶ 35-36. Taking the uncontroverted allegations in the complaint as true, we consider whether AVN satisfied the Calder effects test to show by a preponderance of the evidence that Eggen intentionally directed tortious conduct toward West Virginia and knew his conduct would harm MATRIC, a West Virginia business.

The Calder effects test generally requires that a plaintiff establish:

> (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity.

Carefirst, 334 F.3d at n.7 (citing IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 265-66 (3d Cir. 1988)). Importantly, the effects test does not supplant the minimum contacts analysis but informs it. While the location in which the plaintiff feels the injury is relevant to the jurisdictional inquiry, it must be accompanied by defendant's own contacts with the state for

jurisdiction to be upheld. Consulting Eng'rs Corp., 561 F.3d at 280 (citing ESAB Grp, Inc., 126 F.3d at 626).

AVN satisfies the first element of the effects test since "[f]raud, of course, is a quintessential intentional tort." McCune v. Xerox Corp., 225 F.3d 654 (4th Cir. 2000). The second and third elements of the effects test are met inasmuch as RT, acting by Eggen, expressly aimed financial harm at MATRIC, a West Virginia corporation knowing that RT could not fulfill its end of the bargain and that MATRIC would experience the harm in West Virginia. ESAB Grp., Inc. v. Centricut, Inc., 126 F.3d 617, 625 (4th Cir. 1997) (citing Indianapolis Colts, Inc. v. Metro. Baltimore Football Club Ltd. P'ship, 34 F.3d 410, 412 (7th Cir. 1994) (discussing Calder's upholding of jurisdiction of a forum state involving a tort "expressly aimed" at the forum state with knowledge of the impact that would be felt there).

It is undisputed that Eggen signed the services agreement on behalf of RT, which obligated MATRIC to complete work in West Virginia. See ECF 11-2; ECF 11-3. By signing the services agreement on behalf of the company with knowledge that RT could not pay under the contract, Eggen knew that MATRIC would suffer the brunt of the harm in West Virginia.

Consequently, the court determines that AVN has satisfied all three prongs of the Calder effects test.

Based on the foregoing, AVN has made a prima facie showing that Eggen had minimum contacts with West Virginia.

C.    Traditional Notions of Fair Play and Substantial Justice

Where minimum contacts are met, the court must determine whether the exercise of jurisdiction offends "traditional notions of fair play and substantial justice." Int'l Shoe Co., 326 U.S. at 316. The reasonableness of exercising jurisdiction is determined by balancing several factors: (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies. See Asahi Metal Indus. Co. v.Super. Ct. of Cal., 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); World-Wide Volkswagen Corp., 444 U.S. at 292.

Eggen contends that his participation in litigation in West Virginia would place a substantial burden on him because he lives in Texas, does not travel to West Virginia, and is not

necessary to AVN's ability to obtain relief against RT.  <u>See</u> ECF 12 at 11.

AVN maintains that such notions are not violated because: (1) Eggen's presence as a defendant will do little to increase the burden to him since he is a member of RT, is a significant witness in the case, is represented by the same counsel as RT, and the same claims are brought against both him and RT; (2) West Virginia has an interest in adjudicating a contract dispute that involves one of its resident employers where that resident suffered significant damage; (3) AVN has an obvious interest in obtaining relief; and (4) dismissing the claims against Eggen would require AVN to file a separate action against Eggen in Texas; (5) thereby wasting judicial resources by requiring AVN to litigate the same issue in two states.  <u>See</u> ECF 13 at 6.

The balance of factors supports the court's reasonable exercise of jurisdiction, and its exercise of personal jurisdiction over Eggen does not offend traditional notions of fair play and substantial justice.  First, Eggen will likely be a key witness at the trial that also involves RT, in which he has an ownership interest, thereby reducing or eliminating the alleged burden of travel.  Furthermore, litigation against Eggen and RT in the same forum state promotes efficiency as judicial

resources will be better conserved.  Lastly, West Virginia has a valid interest in adjudicating this dispute, especially as it relates to injuries to a West Virginia corporation. [2]

### IV.  Conclusion

Pursuant to the foregoing, the court DENIES Eggen's Motion to Dismiss for Lack of Personal Jurisdiction. Consequently, the Motion for a Protective Order and for a Stay of Future Discovery Directed to Mr. Eggen is DENIED as moot.

The Clerk is directed to transmit this memorandum opinion and order to all counsel of record and to any unrepresented parties.

ENTER:    July 1, 2024

John T. Copenhaver, Jr.
Senior United States District Judge

---

[2] AVN also argues in its reply to Eggen's motion to dismiss that another ground for personal jurisdiction exists, namely, that his complaint alleges piercing of the corporate veil.  See ECF 13 at 7.  Because the court has determined that it has jurisdiction over Eggen, the court need not address AVN's proposed second ground for jurisdiction.